Bryan McCAA, Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,
Defendant.

No. CV–N–04–0022–LRH–VPC.

United States District Court,
D. Nevada.

Aug. 5, 2004.

James Wilson, James E. Wilson, Jr., Carson City, NV, Kenneth Friedman, Friedman, Rubin & White, Michael White, Pro Hac Vice Firm, Bremerton, WA, for Plaintiff.

Thierry Barkley, Thorndal Armstrong Delk, et al., Reno, NV, for Defendant.

## ORDER

HICKS, District Judge.

Defendant Massachusetts Mutual Life Insurance Company ("Mass Mutual") filed a Notice of Removal from the First Judicial District Court of the State of Nevada pursuant to 28 U.S.C. § 1441 (Docket No. 2). Plaintiff Bryan McCaa ("Plaintiff") filed a Motion to Remand (Docket No. 6), to which the Defendant subsequently replied (Docket No. 15). Because the Court concludes that Mass Mutual has not met its burden of proving, by a preponderance of the evidence, that it is more likely than not that the statutory amount in controversy requirement has been met, this Court cannot maintain jurisdiction. Plaintiff's Motion to Remand will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In March 1989, Plaintiff purchased a long-term disability policy issued by Connecticut Mutual Life Insurance Company ("Connecticut Mutual"). In April 1990, due to a degenerative eye disease, Plaintiff became unable to perform his occupational duties. Plaintiff made claims for benefits under the policy in May and June of 1990. In July 1990, Connecticut Mutual informed Plaintiff that his disability benefits had been approved, effective April 1, 1990, and that the benefits would become payable beginning May 31, 1990.

From May 31, 1990 until February 1996, Connecticut Mutual paid Plaintiff the full benefits ($4,000.00 per month) to which he

was apparently entitled under the policy. Connecticut Mutual then merged with Mass Mutual, with Mass Mutual as successor in interest. Mass Mutual continued making full benefit payments until June 30, 2003. In all, Connecticut Mutual, then Mass Mutual, paid Plaintiff total disability benefits for approximately thirteen years.

In November 2001, Mass Mutual claimed the company used an incorrect formula to determine pre-disability income,[1] and maintained that it had overpaid benefits to Plaintiff. Though Mass Mutual continued making full benefit payments until May 2003, it determined, using its revised formula for calculating pre-disability earnings, that it had overpaid Plaintiff $40,080.00 in the year 2000, and $21,920.00 in 2001, for a total of $62,000.00. Consequently, Mass Mutual ceased paying benefits on June 1, 2003.

In December 2003, Mass Mutual agreed to reinstate Plaintiff's benefits retroactive to June 1, 2003, but at a rate of $2,000.00 per month. This represented a fifty percent reduction in benefits. On December 15, 2003, Mass Mutual issued Plaintiff a check for $10,000.00, representing the recalculated benefit payments for June through October 2003.

Plaintiff filed suit against Mass Mutual in the First Judicial District Court of the State of Nevada on December 16, 2003, stating claims for relief on theories of breach of contract, bad faith, and violation of the Nevada Unfair Trade Practices Act. Plaintiff seeks recovery under these claims for special, general and punitive damages in excess of $10,000.00, and attorneys' fees and costs. On January 15, 2004, Mass Mutual removed the action to this Court pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). Plaintiff subsequently filed a motion to remand.

## II. LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant...to the district court of the United States for any district...where such action is pending." 28 U.S.C. § 1441(a). Among other reasons, the district courts of the United States have original jurisdiction when the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. 28 U.S.C. § 1332(a).

██ In determining whether the defendant has established that diversity jurisdiction exists, the district court must first consider whether it is "facially apparent" from the complaint that the jurisdictional amount in controversy requirement is met. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997). Generally, courts apply a mechanical test to determine whether the amount in controversy requirement has been met when a case is removed to federal court: "The district court simply reads the ad damnum clause of the complaint to determine whether the matter in controversy exceeds [$75,-000.00]." *Id.* at 375. If it is apparent to the court that the claim was made in good faith, then the value of the claim controls for purposes of removal, unless it appears "to a legal certainty that the plaintiff cannot recover the amount claimed." *Id.* However, if a plaintiff's complaint fails to specify damages, or specifies damages in an amount less than the jurisdictional minimum, the defendant must show, by a preponderance of the evidence, facts demonstrating that the amount involved in the litigation exceeds the statutory jurisdictional threshold. *Sanchez v. Monumental*

---

1. Pursuant to the long-term disability insurance policy, predisability income is the average monthly income for the last thirteen months before the start of the disability, or the average for twenty-four months, whichever is greater.

*Life Ins. Co.,* 102 F.3d 398, 403–04 (9th Cir.1996). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Id.* at 404. Consequently, "jurisdiction may [not] be maintained by mere averment." *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Sanchez,* 102 F.3d at 403.

An action may be remanded to state court for lack of subject matter jurisdiction or for any defect in the removal procedure. 28 U.S.C. § 1447(c). The proper procedure for challenging a removal is a motion to remand. Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* (2001 ed.) § 2:1080. On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing, by a preponderance of the evidence, that removal was proper. *Sanchez,* 102 F.3d at 403–404; *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir.1992). Moreover, the removal statutes are construed restrictively, and any doubts about removability are resolved in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Gaus,* 980 F.2d at 566.

## III. DISCUSSION

As Mass Mutual is the party asserting jurisdiction in federal court, Mass Mutual bears the burden of proving that this Court may exercise jurisdiction over the present action. *McNutt,* 298 U.S. at 189, 56 S.Ct. 780. Mass Mutual can meet this burden if: 1) the parties are of diverse citizenship; and 2) the amount in controversy, exclusive of interests and costs, exceeds $75,000.00. 28 U.S.C. § 1332(a). As diversity of citizenship is uncontested, the sole jurisdictional question is whether Mass Mutual has met its burden of proving, by a preponderance of the evidence, that it is more likely than not that the amount in controversy requirement has been satisfied. *Sanchez,* 102 F.3d at 403–404.

Prior to addressing the parties' arguments in relation to the amount in controversy, the Court notes that Plaintiff requests damages "in excess of $10,000.00." As a result, it is not facially apparent from Plaintiff's complaint that the amount in controversy exceeds $75,000. *See Singer,* 116 F.3d at 377. Therefore, the Court must determine whether Mass Mutual has introduced sufficient facts to prove that it is "more likely than not" that the amount in controversy exceeds the statutory jurisdictional threshold. *Sanchez,* 102 F.3d at 403–04.

Plaintiff contends that Mass Mutual improperly removed this action to this Court, and that this Court cannot exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Specifically, Plaintiff asserts that Mass Mutual has not satisfied the requirements of 28 U.S.C. § 1332(a) because Mass Mutual failed to meet its burden of proof, by a preponderance of the evidence, that the claim more likely than not exceeds $75,000.00. Therefore, Plaintiff argues, the Court should remand the action to state court pursuant to 28 U.S.C. § 1447(c). Mass Mutual, on the other hand, asserts that removal was in fact proper because the amount in controversy requirement has been satisfied. Mass Mutual presents four arguments to support this assertion. First, Mass Mutual argues that the Court should consider: a) the $62,000.00 it claims it overpaid Plaintiff in 2000 and 2001; coupled with b) the present contract dispute (allegedly $4,000.00/month for seven months, or $28,000.00); and c) the continuing dispute for future benefits through the anticipated date for trial (al-

legedly $48,000.00).[2] Second, Mass Mutual argues that the Court should consider the possibility that punitive damages may be awarded. Third, Mass Mutual argues that the Court should consider attorneys' fees. Finally, Mass Mutual argues that the Court should consider Plaintiff's failure to plead a specific amount of damages in his complaint. Each of Mass Mutual's arguments will be addressed below.

### 1. Aggregation of Alleged Overpayments, Past Benefits, and Future Benefits

■ As stated previously, Mass Mutual asserts that the Court, in determining the amount in controversy, should aggregate the alleged "overpayment (recoupment) claim," ($62,000.00),[3] "the continuing contract dispute between the parties," ($28,-000.00), and "the continuing dispute for future benefits through the anticipated date for trial" ($48,000.00). (Def.'s Statement Concerning Removal at 2–3). This argument is faulty for three reasons.

First, Plaintiff has not made a claim for $62,000.00. Plaintiff merely alleges that Mass Mutual " breach[ed] the material terms of the policy by asserting rights to amounts allegedly 'overpaid' to [Plaintiff] and improperly reducing the amount of benefits [Plaintiff] will be eligible for in the future." (Pl.'s Compl. ¶ 39). Thus, Plaintiff is not claiming that Mass Mutual may be liable to him for $62,000.00. Plaintiff is merely claiming that Mass Mutual breached the policy at issue. From the face of Plaintiff's complaint, therefore, it is not evident that the amount in controversy requirement has been met. *Singer*, 116

F.3d at 377. Thus, Mass Mutual has the burden of proving, by a preponderance of the evidence, that the amount in controversy requirement has "more likely than not" been satisfied. *Sanchez*, 102 F.3d at 403–04. Because Mass Mutual offers no evidence to demonstrate that Plaintiff is seeking to recover $62,000.00, Mass Mutual cannot utilize that sum to meet its burden of proof.

■ Second, it appears to the Court that Plaintiff is seeking to recover, at most, $18,000.00 in past benefits. For purposes of removal jurisdiction, the amount in controversy is determined at the time of removal. *Certain Underwriters of Lloyd's London v. Argonaut Ins. Co.*, 264 F.Supp.2d 926, 932 (N.D.Cal.2003); *Meritcare, Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217–18 (3rd Cir.1999). As stated previously, Mass Mutual terminated Plaintiff's monthly benefits of $4,000.00 on June 1, 2003. Thus, if Mass Mutual breached the contract, it did not do so until that date. On December 15, 2003, when Mass Mutual agreed to reinstate Plaintiff's benefits at fifty percent of the original amount, it gave Plaintiff a check for $10,000.00 for back benefits for June through October 2003. (Def.'s Notice of Removal ¶ 9).

Mass Mutual removed the action to this Court on January 15, 2003. At most, then, it appears that Plaintiff has a past claim for benefits from June 2003 through December 2003. *Argonaut Ins. Co.*, 264 F.Supp.2d at 932. At $4,000.00 per month, the most Plaintiff would be able to recover as of the time of removal is $28,000.00. Moreover, the actual amount in controver-

2. If the Court were permitted to consider these sums together in determining the amount in controversy, the statutory requirement would be met, as these sums total $138,000. However, as further discussed in this Order, the Court cannot consider these sums in the manner urged by Mass Mutual.

3. The Court notes that Defendant has answered Plaintiff's complaint (Docket No. 5). However, because Defendant has not made a counterclaim for the $62,000.00 it allegedly overpaid Plaintiff, the Court will not consider whether Defendant could have aggregated the $62,000.00 with Plaintiff's claim.

sy is mitigated by the $10,000.00 payment Mass Mutual made to Plaintiff in December 2003. Thus, it appears to the Court that the most Plaintiff may claim as of the time of removal is $18,000.00, not the $62,000.00 alleged by Mass Mutual. This figure falls far short of the statutory requirement, and, standing alone, it is insufficient for Mass Mutual to meet its burden of proof that the amount in controversy will more likely than not exceed the jurisdictional threshold. *Sanchez,* 102 F.3d at 403–04.

Finally, Mass Mutual argues that this Court should consider the "continuing dispute for future benefits through the anticipated date for trial." However, Plaintiff may not recover future benefits as damages unless Mass Mutual repudiated the contract. *New York Life Ins. Co. v. Viglas,* 297 U.S. 672, 678, 56 S.Ct. 615, 80 L.Ed. 971 (1936); *see also General American Life Ins. Co. v. Yarbrough,* 360 F.2d 562, 568 (8th Cir.1966); *Trainor v. Mut. Life Ins. Co. of New York,* 131 F.2d 895, 897 (7th Cir.1942); *Willis v. Ins. Co. of N. Am.,* 820 F.Supp. 408, 410 (E.D.Ark.1993). In *Viglas,* an insurance company paid disability benefits for one year, then ceased making payments after asserting that the insured was no longer disabled. 297 U.S. at 675, 56 S.Ct. 615. The Court held that the company, even if mistaken in its assessment that the insured was not disabled, had not repudiated the agreement. *Id.* at 676–77, 56 S.Ct. 615. Therefore, the insured could not recover damages for future benefit payments that were not yet due. *Id.* at 678, 56 S.Ct. 615.

Here, Mass Mutual has not repudiated the contract. To the contrary, Mass Mutual has continued to pay Plaintiff at least fifty percent of the benefits Plaintiff claims he is owed. Under *Viglas,* then, regardless of the period of time that will pass until trial, Plaintiff is not presently entitled to the value of future benefit payments.

*Id.* As such, in calculating the amount in controversy, this Court may not consider the $48,000.00 that Mass Mutual alleges it will be required to pay Plaintiff from January 2003 until the time of trial. *Id.*

In conclusion, Plaintiff has requested damages in excess of $10,000.00. However, since Plaintiff has not made a claim for $62,000.00, that figure cannot be used in determining the amount in controversy. *See Singer,* 116 F.3d at 377. Also, since Plaintiff cannot presently recover future damages, such damages may not be considered by the Court. *See Viglas,* 297 U.S. at 678, 56 S.Ct. 615. Finally, since the amount in controversy is determined at the time of removal, the Court may only the consider the amount of damages allegedly incurred at that time. *Argonaut Ins. Co.,* 264 F.Supp.2d at 932. Since it appears to the Court that, at most, $18,000.00 was in controversy at that time, it is not facially evident from Plaintiff's complaint that the amount in controversy requirement has been satisfied. *See Singer,* 116 F.3d at 377. Thus, Mass Mutual must prove, by a preponderance of the evidence, that punitive damages and attorneys' fees, coupled with the apparent $18,000.00 claim for past benefits, will more likely than not exceed the statutory minimum. *Sanchez,* 102 F.3d at 403–04. In regards to the alleged overpayment, the present contract dispute, and the continuing dispute for future benefits, Mass Mutual has not met this burden. As discussed below, Mass Mutual fails to meet this burden in regards to its other benefits, as well.

**2. Punitive Damages**

Mass Mutual argues that this Court, in calculating the amount in controversy, should consider the punitive damages that Plaintiff can recover as a matter of law. "[P]unitive damages are part of the amount in controversy in a civil ac-

tion." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir.2001) (*citing Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943). Moreover, Nevada law provides that a jury may award punitive damages against an insurer who acts in bad faith. Nev.Rev.Stat. 42.005(2)(a) (allowing for punitive damages when a plaintiff proves, by clear and convincing evidence, that the defendant is guilty of oppression, fraud, or malice). However, as the Nevada Supreme Court has stated:

> the Court has difficulty constructing a factual situation where an insurer who violated the statute could have done so with a malicious intent yet not denied, or refused to pay, the claim. Oppression means " 'a conscious disregard for the rights of others which constitute[s] an act of subjecting plaintiffs to cruel and unjust hardship....' " (citation omitted). [M]alice involves actual hatred or ill will, or the desire to successfully injure, vex, annoy or harass. (citations omitted)....*It is difficult to conceive a situation where an insurer would act with such ill-will toward an insured or subject an insured to cruel and unusual hardship and yet not deny or refuse to pay the claim.*

*Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 863 F.Supp. 1237, 1250–51 (D.Nev.1994) (emphasis added). Here, while Mass Mutual discontinued benefit payments for seven months, it later awarded Plaintiff $10,000.00 in back benefits for the months of June through October 2003. Additionally, Mass Mutual has continued to pay Plaintiff partial benefits of $2,000.00 per month. Because Mass Mutual has continued to pay partial benefits under the policy, proving that Mass Mutual acted in bad faith or with oppression, fraud, or malice would be a difficult task. *See id.;* Nev.Rev.Stat. 42.005. Moreover, a finding of bad faith does not automatically entitle

Plaintiff to recover punitive damages. *Id.* at 1251 (*citing United States Fid. & Guar. Co. v. Peterson*, 91 Nev. 617, 540 P.2d 1070 (1975)). Thus, even if it is determined that Mass Mutual acted in bad faith, it seems unlikely that Plaintiff could, or would, recover punitive damages in this action, because Mass Mutual has continued to pay partial benefits under the policy. *See Peterson*, 91 Nev. 617, 540 P.2d 1070; *Pioneer Chlor Alkali Co.*, 863 F.Supp. at 1250–51. Furthermore, to meet its burden of proof as to the amount in controversy, Mass Mutual could have introduced evidence of jury verdicts in cases involving similar facts. *Surber v. Reliance Nat'l Indem. Co.*, 110 F.Supp.2d 1227, 1232 (N.D.Cal.2000). Mass Mutual did not do so. Moreover, Mass Mutual does not cite to, and the Court is not aware of, any cases involving jury awards for bad faith insurance claims where the insurer continued to pay partial benefits after an alleged breach of contract.

In conclusion, Mass Mutual provides no evidence that punitive damages, coupled with other relief that Plaintiff seeks, will more likely than not exceed the jurisdictional minimum. In fact, Mass Mutual makes no allegations as to what amount, if any, Plaintiff may possibly recover in punitive damages. Thus, Mass Mutual fails to meet the requisite burden of proof.

**3. Attorneys' Fees**

Mass Mutual also argues that this Court should consider the potential award of attorneys' fees in calculating the amount in controversy. (Def.'s Mot. in Opp. to Pl.'s Mot. to Remand at 5). For purposes of calculating the amount in controversy, in addition to considering the plaintiff's compensatory damages, a court may, in fact, consider a potential award of attorneys' fees if such fees are authorized by statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir.1998); *see*

*also Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 202, 54 S.Ct. 133, 78 L.Ed. 267 (1933). Nevada law allows a prevailing party to recover attorneys' fees in two situations: 1) when he or she does not recover more than $20,000.00; and 2) when, without regard to the recovery sought, the opposing party's defense was "brought without reasonable grounds or to harass the prevailing party." Nev.Rev. Stat. 18.010. However, for a court to consider attorneys' fees in its calculation of the amount in controversy, the defendant must provide factual support for its argument that such fees should be considered. *Martinez v. Kirk xpedx, a Div. of Int'l Paper Co.,* 2003 WL 21715875 at *2 (N.D.Cal.2003) (defendant who merely cited to cases allowing courts to consider attorneys' fees in determining amount in controversy provided insufficient evidence that 'more likely than not' standard would be met); *see also Matheson v. Progressive Specialty Ins. Co.,* 319 F.3d 1089, 1090–91 (9th Cir.2003) ("Conclusory allegations as to the amount in controversy are insufficient").

Here, Mass Mutual has failed to provide any factual support for its argument that this Court should consider attorneys' fees in determining the amount in controversy. *See Martinez,* 2003 WL 21715875 at *2. Furthermore, Mass Mutual has failed to provide any evidence that: 1) Plaintiff will recover less than $20,000; or 2) Mass Mutual is defending this claim without reasonable grounds or to harass Plaintiff. *See* Nev.Rev.Stat. 18.010. Indeed, it would be difficult, based on Mass Mutual's argument that the Court should consider attorneys' fees, for this Court to infer Mass Mutual is defending this claim without reasonable grounds, or to harass Plaintiff, merely to obtain federal diversity jurisdiction. See *id.*

Thus, while Mass Mutual correctly asserts that this Court may consider attorneys' fees in determining the amount in controversy, Mass Mutual must provide factual support for its argument. *See Martinez,* 2003 WL 21715875 at *2; Nev. Rev.Stat. 18.010. Mass Mutual has failed to do so. Mass Mutual, therefore, has not met its burden of proving, by a preponderance of the evidence, that attorneys' fees, coupled with compensatory damages and other relief that Plaintiff seeks, would more likely than not exceed the statutory minimum. *See Sanchez,* 102 F.3d at 403–04.

**D. Amount of Damages Alleged in Plaintiff's Complaint**

Finally, Mass Mutual urges the Court to consider Plaintiff's failure to plead a specific amount of damages in his complaint, and to "find[ ] in Plaintiff's silence implicit support for Defendant's allegations as to the amount in controversy" *citing Bosinger v. Phillips Plastics Corp.,* 57 F.Supp.2d 986, 989 (S.D.Cal.1999). However, Nevada law specifies that "[w]here a claimant seeks damages of more than $10,000, the demand shall be for damages 'in excess of $10,000' without further specification of amount." Nev. R. Civ. P. 8(a). Plaintiff is silent as to the actual amount in controversy because he is required to be silent by Nevada law. Thus, the Court cannot find, implicit in Plaintiff's silence, support for Mass Mutual's allegations as to the amount in controversy. Moreover, as stated previously, when a plaintiff's complaint fails to specify damages, the defendant must show, by a preponderance of the evidence, facts demonstrating that the amount involved in the litigation exceeds the statutory threshold. *Sanchez,* 102 F.3d at 403–04. However, Mass Mutual has provided no factual evidence. *See, e.g., Martinez,* 2003 WL 21715875 at *2. Therefore, Mass Mutual has not met the requisite burden of proof. *See Sanchez,* 102 F.3d at 403–04.

## IV. CONCLUSION

In sum, the removal statutes are construed restrictively, and any doubts about removability are resolved in favor of remanding the case to state court. *Gaus,* 980 F.2d at 566. Thus, on a motion to remand, the defendant bears the burden of establishing, by a preponderance of the evidence, that removal was proper. *Sanchez,* 102 F.3d at 403–04. "Under this burden, the defendant must provide evidence that it is 'more likely than not' that the amount in controversy exceeds [the statutory minimum]." *Id.* at 404.

Mass Mutual has failed to meet this burden for three reasons. First, contrary to Mass Mutual's argument, Plaintiff has not made a claim for $62,000.00. Thus, the Court cannot consider this sum in determining the amount in controversy. Second, the amount in controversy is determined at the time of removal. *Argonaut Ins. Co.,* 264 F.Supp.2d at 932. It appears to the Court, therefore, that Plaintiff is requesting approximately $18,000.00 in compensatory damages for Mass Mutual's alleged failure to pay full benefits from June 2003 through December 2003. This figure falls far short of the statutory requirement. Third, since Mass Mutual did not repudiate the contract, Plaintiff is not presently entitled to future benefits. *See Viglas,* 297 U.S. at 678, 56 S.Ct. 615. Thus, this Court cannot consider the approximately $48,000.00 in benefits that Mass Mutual contends it will be required to pay Plaintiff from the time of removal until the time of trial. *Id.* Finally, Mass Mutual argues that the Court should consider attorneys' fees and punitive damages in determining the amount in controversy. However, Mass Mutual provides the Court with no factual evidence that, even if attorneys' fees and punitive damages were awarded, the amount in controversy would more likely than not exceed the statutory minimum. *See, e.g., Martinez,* 2003 WL 21715875 at *2.

Mass Mutual, therefore, has failed to meet its burden of showing that the $75,000.00 amount in controversy requirement set forth in 28 U.S.C. § 1332(a) has been met.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand (Docket No. 6) is GRANTED.

IT IS SO ORDERED.